United States District Court
For the Northern District of California

1

2

3

4          UNITED STATES DISTRICT COURT

5          NORTHERN DISTRICT OF CALIFORNIA

6

7

8

9    EDWARD LAWRENCE,

10              Plaintiff,                          No. C 14-1272 PJH

11         v.                                       **ORDER GRANTING MOTION
                                                    TO DISMISS**
12   WELLS FARGO BANK, N.A.,

13              Defendant.
     _____/

14

15         In May 2004, plaintiff Edward Lawrence obtained a loan in the amount of $515,200

16   from World Savings Bank, FSB.  World Savings subsequently changed its name to

17   Wachovia Mortgage, FSB, and then changed its name to Wells Fargo Bank Southwest,

18   N.A., before merging with Wells Fargo.

19         The loan – an "Adjustable Rate Mortgage Note Pick-A-Payment Loan" – was

20   secured by a promissory note and deed of trust on certain real property located in Walnut

21   Creek, California.  FAC ¶ 29.[1]  Documents attached to Wells Fargo's Request for Judicial

22   Notice in support of its motion to dismiss show that plaintiff defaulted on the loan, and that

23   on November 7, 2012, Cal-Western Reconveyance, as the trustee, recorded a Notice of

24   Default with the Contra Costa County Recorder's Office.  The Notice stated that the amount

25   _____

26         [1]  Plaintiff explains a "Pick-a-Payment Loan" as "a loan in which the borrower could
27   select how much he or she pays each month to defendant from four options.  Under these four
     options, the borrower could (1) make a loan payment that was equivalent to the standard 30-
28   year term; (2) make a loan payment equivalent to a 15-year term payment; (3) make interest
     only payments; or (4) make a minimum payment in an amount to be determined by defendant."
     FAC ¶ 27.

United States District Court
For the Northern District of California

1  in default as of November 1, 2012 was $72,413.72.   On March 1, 2013, Cal-Western

2  recorded a Notice of Trustee's Sale, set for March 25, 2013.

3       Plaintiff alleges that he submitted his first "request for modification assistance" or

4  "RMA" on March 25, 2013; that on March 21, 2013, Wells Fargo stated that he was pre-

5  qualified and eligible for modification assistance, and promised to postpone any

6  subsequent sale as long as plaintiff remained in contact and submitted all required

7  documentation; and that on March 25, 2013, Wells Fargo asserted that plaintiff had

8  previously been denied a modification for insufficient income and needed to "include" his

9  significant other in the RMA.  FAC ¶¶ 31-33.

10       Plaintiff asserts further that on April 2, 2013, Wells Fargo requested additional

11  documents, and that he also submitted a Qualified Written Request ("QWR") on that date,

12  to which Wells Fargo failed to respond; and that on April 5, 2013, he submitted the

13  additional documents requested by Wells Fargo.  FAC ¶¶ 34-36.

14       He alleges that on April 9, 2013, Wells Fargo accepted the RMA and the sale date

15  was subsequently postponed; that on August 6, 2013, the RMA was sent to "underwriting;"

16  that on August 9, 2013, Wells Fargo made a request for additional documents from plaintiff;

17  that on September 19, 2013, Wells Fargo threatened to close the file if the additional

18  documents were not submitted; that on September 27 and October 4, 2013, plaintiff

19  submitted additional documents; and that Wells Fargo nonetheless closed plaintiff's file on

20  October 1, 2013.  FAC ¶¶ 37-44.

21       Plaintiff asserts that he has been attempting to "reopen" the file since that time; that

22  he submitted the "entire RMA package" on November 18, 2013, and again on December 4,

23  2013, in an attempt to reopen the file; and that Wells Fargo has refused to acknowledge

24  receipt of the RMA package.  FAC ¶¶ 45-48.

25       Documents attached to Wells Fargo's RJN show that on January 6, 2014, Cal-

26  Western recorded a Notice of Trustee's Sale, set for January 30, 2014.  However, that sale

27  did not go forward.  Plaintiff alleges that Wells Fargo subsequently set another date for the

28  trustee's sale on January 30, 2014, which was later postponed with no new date set.

United States District Court

For the Northern District of California

On January 28, 2014, two days before the last date set for the trustee's sale, plaintiff filed the present action against Wells Fargo in the Superior Court of California, County of Contra Costa, alleging violation of California Civil Code § 2923.5; slander of title; negligent misrepresentation; violation of California Business & Professions Code § 17200; equitable estoppel; and failure to respond to a Qualified Written Request ("QWR"), in violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, et seq.

On March 19, 2014, Wells Fargo removed the case based on federal question jurisdiction and diversity jurisdiction. Wells Fargo then filed a motion to dismiss, but on April 18, 2014, plaintiff filed a first amended complaint ("FAC"). Wells Fargo withdrew the motion to dismiss the original complaint.

In the FAC, plaintiff asserts claims of wrongful foreclosure; breach of contract and breach of the implied covenant; violation of § 17200; equitable estoppel; and failure to respond to a QWR, in violation of RESPA. In addition, plaintiff alleges in an introductory sentence that the FAC is brought "pursuant to Civil Code Section 2923.5 and 2924(g)(c)(i)(A)."[2] While the FAC does not include a cause of action alleging the violation of § 2923.5, it does reference § 2923.5 (along with § 2923.6, and 2924c) in the first (wrongful foreclosure) and second (breach of implied covenant) causes of action in the FAC.

In the "Background Information" section of the FAC, plaintiff alleges that on February 28, 2013, Wells Fargo entered into an amended consent agreement with the Office of the Comptroller of the Currency ("OCC") relating to allegations of unsafe and unsound practices in residential mortgage servicing, in In the Matter of Wells Fargo, N.A. See FAC ¶¶ 3, 12. Plaintiff asserts that Wells Fargo also entered into the National Mortgage Settlement Agreement with 49 state attorneys general in March 2013. FAC ¶ 4.

Plaintiff contends that the amended consent agreement required that servicers,

---

[2] Section 2924(g)(c)(i)(A) does not exist. Plaintiff may have intended to cite Civil Code § 2924g(c)(1)(A), which provides that "[t]here may be a postponement or postponements of the sale proceedings . . . [u]pon the order of any court of competent jurisdiction."

United States District Court

For the Northern District of California

1  including Wells Fargo, provide $9.3 billion in assistance to borrowers, including $3.6 billion

2  in cash payments and $5.7 billion in other assistance such as loan modifications and

3  forgiveness of deficiency judgments.  FAC ¶ 13.  Plaintiff asserts further that Wells Fargo

4  signed a Servicer Participation Agreement ("SPA") that articulated its duties to properly

5  consider distressed borrowers for foreclosure prevention alternatives.  FAC ¶ 15.

6        Plaintiff alleges that Wells Fargo is "obligated to evaluate eligible borrowers" under

7  the Home Affordable Modification Program ("HAMP") "calculation logistics," which he

8  claims are "popularly known as waterfalls."  FAC ¶ 16.  Among other things, plaintiff asserts

9  that "[t]he HAMP Tier 1 calculation logic is designed to secure a modified mortgage

10  payment that is less than or equal [sic] 31% of the borrower's front-end, post-modification

11  debt-to-income ("DTI") ratio."  FAC ¶ 17.  He claims that "[t]he calculation logic manipulates

12  certain variables including interest rate, forbearance amounts, and maturity terms,"

13  following which the "proposed modified payment is analyzed under the Net Present Value

14  ('NPV') Test."  FAC ¶¶ 18-19.  He describes the NPV Test as "the lynchpin of the American

15  homeowner's dream," and asserts that it "evaluates many variables including but not limited

16  to: the probability of default, the probability of self cure and the net present value of

17  money."  FAC ¶ 20.

18        Wells Fargo now seeks an order pursuant to Federal Rule of Civil Procedure

19  12(b)(6), dismissing all causes of action asserted in the FAC, for failure to state a claim.

20  Plaintiff's opposition, which under Civil Local Rule 7-3 was due on May 27, 2014, was filed

21  eight days late, on June 4, 2014.  Wells Fargo responded to the late-filed opposition on

22  June 12, 2014.

23                              **DISCUSSION**

24  A.    Legal Standard

25        A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal

26  sufficiency of the claims alleged in the complaint.  Ileto v. Glock, Inc., 349 F.3d 1191,

27  1199-1200 (9th Cir. 2003).  Review is limited to the contents of the complaint.  Allarcom

28  Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).  To survive

United States District Court

For the Northern District of California

a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).  However, legally conclusory statements, not supported by actual factual allegations, need not be accepted.  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); see also In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (district court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").  The allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and quotations omitted).

A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face.  See id. at 558-59.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citation omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Id. at 679.  In the event dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment.  See Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

Although the court generally may not consider material outside the pleadings when resolving a motion to dismiss for failure to state a claim, the court may consider matters

United States District Court

For the Northern District of California

1   that are properly the subject of judicial notice.  Lee v. City of Los Angeles, 250 F.3d 668,

2   688-89 (9th Cir. 2001); Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th

3   Cir. 1986).  Additionally, the court may consider exhibits attached to the complaint, see Hal

4   Roach Studios, Inc. V. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir.

5   1989), as well as documents referenced extensively in the complaint and documents that

6   form the basis of a the plaintiff's claims.  See No. 84 Employer–Teamster Joint Counsel

7   Pension Trust Fund v. America West Holding Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003).

8           Finally, in actions alleging fraud, "the circumstances constituting fraud or mistake

9   shall be stated with particularity."  Fed. R. Civ. P. 9(b).  Under Rule 9(b), falsity must be

10  pled with specificity, including an account of the "time, place, and specific content of the

11  false representations as well as the identities of the parties to the misrepresentations."

12  Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (citations omitted).

13          "[A]llegations of fraud must be specific enough to give defendants notice of the

14  particular misconduct which is alleged to constitute the fraud charged so that they can

15  defend against the charge and not just deny that they have done anything wrong."  Bly-

16  Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation and quotations omitted).

17  In addition, the plaintiff must do more than simply allege the neutral facts necessary to

18  identify the transaction; he must also explain why the disputed statement was untrue or

19  misleading at the time it was made.  Yourish v. California Amplifier, 191 F.3d 983, 992-93

20  (9th Cir. 1999).

21  B.      Home Affordable Modification Program

22          In 2008, Congress passed the Emergency Economic Stabilization Act, Pub.L. No.

23  110–343, 122 Stat. 3765, codified at 12 U.S.C. § 5201, et seq.  This law included the

24  Troubled Asset Relief Program ("TARP"), "which required the Secretary of the Treasury,

25  among many other duties and powers, to 'implement a plan that seeks to maximize

26  assistance for homeowners and . . . encourage the servicers of the underlying mortgages

27  . . . to take advantage of . . . available programs to minimize foreclosures.'"  Wigod v. Wells

28  Fargo Bank, N.A., 673 F.3d 547, 556 (7th Cir. 2012) (quoting 12 U.S.C. § 5219(a)), quoted

in Corvello v. Wells Fargo Bank, NA, 728 F.3d 878, 880 (9th Cir. 2013).

Pursuant to this instruction, the Treasury Department in 2009 initiated HAMP, in an effort to help homeowners avoid foreclosure by restructuring or refinancing their home loans. The Secretary set aside up to $50 billion of TARP funds to induce lenders to refinance mortgages with more favorable interest rates and thereby allow homeowners to avoid foreclosure.

> The Secretary negotiated Servicer Participation Agreements (SPAs) with dozens of home loan servicers, including Wells Fargo. Under the terms of the SPAs, servicers agreed to identify homeowners who were in default or would likely soon be in default on their mortgage payments, and to modify the loans of those eligible under the program. In exchange, servicers would receive a $1,000 payment for each permanent modification, along with other incentives. The SPAs stated that servicers "shall perform the loan modification . . . described in . . . the Program guidelines and procedures issued by the Treasury . . . and . . . any supplemental documentation, instructions, bulletins, letters, directives, or other communications . . . issued by the Treasury."

Wigod, 673 F.3d at 556; see also Corvello, 728 F.3d at 880.

The process of applying for and receiving a permanent modification plays out in several steps, as set forth in Treasury Supplemental Directive 09–01 ("SD 09-01"), the controlling Treasury guideline during the events leading to this suit. First, borrowers supply information about their finances and their inability to pay their current mortgage to the servicer, and the servicer must evaluate whether the borrowers qualify for a loan modification. The servicer computes modified mortgage payments on the basis of the borrowers' information. See Corvallo, 728 F.3d at 880.

For borrowers who appear eligible to participate in HAMP, the servicer then prepares a trial period plan ("TPP"). The TPP requires borrowers to submit documentation to confirm the accuracy of their initial financial representations, and to make trial payments of the modified amount to the servicer. The servicer must use the documentation to "confirm that the borrower[s]" meet the eligibility criteria for a permanent modification. Id. at 880-81 (citing SD 09-01).

Following this, the servicer then must report to the borrowers the results of the eligibility determinations. Id. If a borrower does not qualify for the HAMP program, the

7

United States District Court

For the Northern District of California

1    servicer must not only alert the borrower, but must consider alternatives.  The servicer

2    should "promptly communicate that [ineligibility] determination to the borrower in writing and

3    consider the borrower for another foreclosure prevention alternative."  Id.  For borrowers

4    who have made all their payments and whose representations remain accurate, the

5    servicer must offer a permanent home loan modification.  Id.

6        In general, courts have held that HAMP does not authorize a private right of action

7    against participating lenders.  See Eisan v. Wells Fargo Bank, 2014 WL 1794144 at *5

8    (N.D. Cal. May 6, 2014); Memmot v. OneWest Regional Bank, FSB, 2014 WL 715441 at *4

9    (D. Or. Feb. 21, 2014); see also Bank of America, N.A. v. Roberts, 217 Cal. App. 4th 1386,

10   1399 (2013).  In Corvello, the Ninth Circuit held (following the Seventh Circuit in Wigood)

11   that banks were required to offer permanent modifications to borrowers who completed

12   their obligations under the TPPs, unless the banks had timely notified those borrowers that

13   they did not qualify for a HAMP modification, id. at 883-84 (citing Wigod, 673 F.3d at 562-

14   63), and that where the bank fails to do this, the borrower can sue for breach of contract.

15   C.    Defendant's Motion

16       Wells Fargo makes three main arguments in support of its motion – that the first,

17   second, and third causes of action are preempted by the Home Owners Loan Act of 1933,

18   12 U.S.C. §§ 1461, et seq. ("HOLA"), and regulations promulgated pursuant thereto by the

19   Treasury Department's Office of Thrift Supervision ("OTS"), 12 C.F.R. § 560.2; that any

20   claim based on an alleged violation of the National Mortgage Settlement fails; and that

21   none of the six causes of action asserted in the FAC states a claim.

22       1.    HOLA preemption

23       As an initial matter, Wells Fargo argues that because the first and second causes of

24   action rely on the Homeowners' Bill of Rights ("HBOR"), Cal. Civ. Code §§ 2923.5,

25   2923.55, 2923.6, 2923.7, 2924.17, they are preempted by HOLA because those sections

26   purport to set detailed obligations and restrictions on Wells Fargo's loan servicing.

27   Similarly, Wells Fargo argues, the third cause of action for "breach of" § 17200 relating to

28   loan origination and HBOR violations is also preempted by HOLA.

United States District Court

For the Northern District of California

1    In opposition, plaintiff asserts that HOLA preemption does not apply in this case.

2    HOLA regulates federal savings associations.  Plaintiff contends that while the original

3    lender (World Savings) was a federal savings association, Wells Fargo is not.  He asserts

4    that in such a case, HOLA preemption should apply only to conduct that occurred prior to

5    the time the loan was assumed by a successor that is not a federal savings association.

6    The court finds that the motion to dismiss based on HOLA preemption must be

7    DENIED, without prejudice to raising this argument in response to a second amended

8    complaint.  While it may be that the first, second, and third causes of action are preempted

9    by HOLA, it is difficult to tell from the pleading exactly what plaintiff is trying to allege in

10   those causes of action with regard to Wells Fargo.  Thus, because (as explained below)

11   those claims fail to state a claim, the court need not at this point attempt to resolve the

12   preemption question.[3]

13       2.    Alleged violation of National Mortgage Settlement

14   Wells Fargo asserts that to the extent plaintiff is attempting to base any claim on an

15   alleged violation of the National Mortgage Settlement, which resulted in a consent judgment

16   between Wells Fargo and the government, that claim fails because the only court with

17   jurisdiction to apply and enforce the consent judgment is the U.S. District Court for the

18   District of Columbia, where the case was brought; and because plaintiff is not a party to the

19   consent judgment, and thus lacks standing to seek to enforce it.

20   In opposition, plaintiff argues that Wells Fargo's argument is misguided, as the FAC

21   does not base any cause of action "solely" on Wells Fargo's failure to abide by the SPA, but

22   rather, asserts that Wells Fargo's failure to comply with the SPA "among other actions" by

23   Wells Fargo, "resulted in viable causes of action" against Wells Fargo.  Thus, he asserts,

24

25   _____

26   [3] The court notes that the Ninth Circuit has not ruled on the question whether HOLA applies to Wells Fargo under the circumstances presented here.  While there is disagreement among the district courts, the majority view is that HOLA applies to FSB-originated loans even

27   as to conduct that post-dates the Wachovia/Wells Fargo merger.  See Marquez v. Wells Fargo Bank, N.A., 2013 WL 5141689 at *4 (N.D. Cal. Sept. 13, 2013); see also Metzger v. Wells

28   Fargo Bank, N.A., 2014 WL 1689278 at *4 (C.D. Cal. Apr. 28, 2014).

United States District Court
For the Northern District of California

1    Wells Fargo's arguments regarding the SPA should be "overruled."

2         The court agrees with Wells Fargo that plaintiff has no standing to enforce the

3    National Mortgage Settlement consent judgment.  Numerous courts have held that

4    individual borrowers are merely incidental beneficiaries of the National Mortgage

5    Settlement, and so have no right to bring third-party suits to enforce the consent judgment.

6    Zgo v. Green Tree Servicing LLC, 2014 WL 1028885 at *2 (S.D. Cal. March 13, 2014);

7    Orcilla v. Bank of America, N.A., 2010 WL 5211507 at *3 (N.D. Cal., Dec. 16, 2010); see

8    also Jurewitz v. Bank of Am., N.A.,  938 F.Supp. 2d 994, 998 (S.D. Cal. 2013) (consent

9    judgment contains enforcement provisions, which do not reference possibility of

10   enforcement by individual borrowers).  For the same reason, plaintiff does not have

11   standing to enforce the SPA between Wells Fargo and the Treasury Department.  See,

12   e.g., Ferchau v. CitiMortgage, Inc., 2014 WL 27528 at *4-5 (N.D. Cal. Jan. 2, 2014).

13        3.    Failure to state a claim

14        In the main part of its motion, Wells Fargo argues that each of the five causes of

15   action must be dismissed for failure to state a claim.

16             a.    Wrongful foreclosure

17        In the first cause of action for wrongful foreclosure, plaintiff alleges that he qualified

18   for a modification under HAMP "and other related programs," and that Wells Fargo violated

19   "these federal requirements" by failing to consider him for a modification. FAC ¶¶ 54-55.

20   He cites Civil Code §§ 2923.5(a)(2), 2923.6(b), and 2924c(a)(1), which he claims Wells

21   Fargo has also violated "for the reasons stated above."  FAC ¶¶ 56-59.  He asserts that

22   Wells Fargo "is wrongfully foreclosing on the subject property" and has "failed to act in

23   good faith to assist plaintiff in avoiding foreclosure because it did not contact plaintiff to

24   assess his financial situation and discuss options to avoid foreclosure or inform plaintiff of

25   his right to request a subsequent meeting to be held within 14 days" and "because it did not

26   correctly assess the monthly mortgage payments."  FAC ¶¶ 61-62.  He also asserts that a

27   foreclosure sale would "breach OCC's Minimum Requirements," FAC ¶ 66, although he

28   does not explain what those "Minimum Requirements" are.

1   Wells Fargo argues that the first cause of action for wrongful foreclosure fails

2   because plaintiff fails to plead facts sufficient to satisfy the Rule 8 pleading requirements

3   and/or to state a claim for wrongful foreclosure; and because the claim is preempted by

4   HOLA.  Wells Fargo adds that the exact basis for the claim is uncertain, as plaintiff makes

5   vague references to HAMP and to sections of the California Civil Code, but does not plead

6   facts sufficient to support the elements of a claim of wrongful foreclosure.  In particular,

7   Wells Fargo contends that plaintiff cannot state a claim for wrongful foreclosure because

8   the first element of such a claim is a completed foreclosure.

9   In opposition, plaintiff contends that he has pled facts sufficient to state a claim for

10   wrongful foreclosure.  He asserts that the instrument "initiating the non-judicial foreclosure"

11   – the notice of default – is "defective due to lack of compliance with pre-conditions" as set

12   out in Civil Code § 2323.5(a)(2).  He submits that his argument is not that Wells Fargo's

13   failure to offer a loan modification resulted in a wrongful foreclosure, but that Wells Fargo's

14   failure to comply with § 2323.5(a)(2) created a faulty notice of default.  He argues that

15   because California law requires strict compliance with the non-judicial foreclosure statutes,

16   he has stated a valid claim for wrongful foreclosure based on the alleged violation of

17   § 2323.5(a)(2).

18   The court finds that the motion must be GRANTED.  Plaintiff has not alleged facts

19   sufficient to support a cause of action for wrongful foreclosure.  In California, a foreclosure

20   sale may be set aside by bringing a common law action in equity for wrongful foreclosure, a

21   claim for which is comprised of the following elements:

22   (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully
    oppressive sale of real property pursuant to a power of sale in a mortgage or
23   deed of trust; (2) the party attacking the sale (usually but not always the
    trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the
24   trustor or mortgagor challenges the sale, the trustor or mortgagor tendered
    the amount of the secured indebtedness or was excused from tendering.
25
   Bingham v. Ocwen Loan Servicing, LLC, 2014 WL 1494005 at *7 (N.D. Cal. Apr. 16, 2014);
26
   see also Lona v. CitiBank, N.A., 202 Cal. App. 4th 89, 103 (2011) ("After a nonjudicial
27
   foreclosure sale has been completed, the traditional method by which the sale is
28

11

United States District Court

For the Northern District of California

1    challenged is a suit in equity to set aside the trustee's sale.").

2         It is true that in California, a plaintiff can challenge a foreclosure sale by providing

3    evidence of failure to comply with procedural requirements for the foreclosure sale that

4    caused prejudice to the person attacking the sale.  See Angell v. Superior Court, 73 Cal.

5    App. 4th 691, 700 (1999).  Here, however, there has been no foreclosure sale, just a notice

6    of intent to sell (for a sale that did not take place).

7         There is no state law authorizing a preemptive right of action to determine standing

8    to foreclose, or a claim for damages for wrongful initiation of foreclosure proceedings

9    absent a completed sale.  See Gomes v. Countrywide Home Loans, Inc., 192 Cal. App. 4th

10   1149, 1154 (2011); Robinson v. Countrywide Home Loans, Inc., 199 Cal. App. 4th 42, 46

11   (2011).  Thus, since there has been no sale here – and plaintiff concedes as much by

12   requesting in the complaint that the court "postpone" the sale – plaintiff cannot maintain a

13   cause of action for wrongful foreclosure.  Accordingly, the first cause of action for wrongful

14   foreclosure is dismissed WITH PREJUDICE.

15        Plaintiff also asserts in the first cause of action that Wells Fargo violated Civil Code

16   §§ 2923.5(a)(2), 2923.6(b), and 2924(c)(a)(1) "for the reasons stated above."  FAC ¶¶ 56-

17   59.  The court is unable to locate any facts pled in support of these conclusory allegations.

18   Thus, the court will allow LEAVE TO AMEND as follows.  To the extent that plaintiff

19   intended to assert a claim under § 2923.5, as suggested in his opposition to the present

20   motion, and to seek "a postponement of the sale before it happens," Mabry v. Superior

21   Court, 185 Cal. App. 4th 208, 214 (2010), the court will permit plaintiff to amend the

22   complaint to allege facts sufficient to support such a claim.  By definition, such amendment

23   must include allegations that there is currently pending a notice of intent to sell the

24   property.

25        To the extent that plaintiff intended to assert a claim under § 2923.6, the court will

26   permit plaintiff to amend the complaint, subject to the caveat that § 2923.6 does not impose

27   any duty on lenders or servicers to agree to a loan modification.  See Hamilton v.

28   Greenwich Investors UUVI, LLC, 195 Cal. App. 4th 1602, 1617 (2011).   As for

§ 2924(c)(a)(1), there is no such section in the Civil Code.  It may be that plaintiff intended to cite § 2924c(a)(1), although that is far from clear from the allegations in the FAC.

b.    Breach of contract and breach of the implied covenant

In the second cause of action, plaintiff alleges that he and Wells Fargo entered into a Pick-a-Payment loan agreement in which Wells Fargo became obligated to act in good faith and deal fairly with plaintiff with respect to the loan.  FAC ¶ 72.  Plaintiff asserts that Wells Fargo breached this obligation because the Pick-a-Payment loan payment schedule consists of more than one option for payment, which causes the full amount the borrower will pay to be uncertain.  FAC ¶ 73.  He alleges further that as a result of Wells Fargo's "breach," he has suffered harm because his principal loan balance continues to exponentially increase, which he claims has further hindered his ability to make mortgage payments.  FAC ¶ 74.

In addition, plaintiff alleges that Civil Code §§ 2923.5 and 2923.6 impose an obligation on Wells Fargo to deal fairly and in good faith with him, and that Wells Fargo breached these covenants of good faith and fair dealing by representing to him that his loan modification application was under review, that a decision regarding the application would be provided to him, and that he qualified for a loan modification program.  FAC ¶¶ 75-76.  Plaintiff alleges that Wells Fargo "breached these covenants by failing to provide alternatives to foreclosure and failing to respond to plaintiff's inquiries, such as the Qualified Written Request."  FAC ¶ 77.

Wells Fargo asserts that the second cause of action for breach of contract and breach of the implied covenant fails because the claim is preempted by HOLA; and because plaintiff fails to plead the required elements and fails to plead in accordance with Rule 8.

In particular, Wells Fargo contends that the claim fails because plaintiff himself is in breach of the agreement (the note and deed of trust) because he has failed to make the loan payments.  In addition, Wells Fargo contends that plaintiff has failed to allege any facts showing that Wells Fargo interfered with his rights under the agreement, and at most, has

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

1  alleged only that Wells Fargo did not provide him with a loan modification.  However, Wells

2  Fargo argues, there is no contract requiring Wells Fargo to provide plaintiff with a loan

3  modification.  Wells Fargo notes that any implied covenant of good faith and fair dealing

4  cannot contradict the express terms of a contract, and that here, plaintiff is simply

5  attempting to re-write the terms of the already existing contract (the loan agreement).

6      In opposition, plaintiff contends that he has sufficiently pled a cause of action for

7  breach of the implied covenant.  He provides a lengthy recitation of the elements of the

8  claim, citing Tanner v. Title Ins. & Trust Co., 20 Cal. 2d 814 (1942), but references

9  absolutely no facts from the FAC in support of these elements.

10     The court finds that the motion must be GRANTED.  A breach of contract may be

11 established on the basis of either an express provision of the contract or on the implied

12 covenant of good faith and fair dealing.  See Storek & Storek, Inc. v. Citicorp Real Estate,

13 Inc., 100 Cal. App. 4th 44, 55 (2002).  The elements of a cause of action for breach of

14 contract are (1) the existence of a contract, (2) plaintiff's performance or excuse for

15 nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff.

16 Oasis West Realty LLC v. Goldman, 51 Cal. 4th 811, 821 (2011).  Here, however, even

17 though plaintiff labels this cause of action "breach of contract and breach of the implied

18 covenant of good faith and fair dealing," he concedes in the opposition that he is asserting

19 only a claim of breach of the implied covenant.

20     "[E]very contract imposes upon each party a duty of good faith and fair dealing in the

21 performance of the contract such that neither party shall do anything which will have the

22 effect of destroying or injuring the right of either party to receive the fruits of the contract."

23 Storek, 100 Cal. App. 4th at 55.  The elements of a cause of action for breach of the

24 implied covenant of good faith and fair dealing are the same as the elements of a cause of

25 action for breach of contract, except that instead of showing that the defendant breached

26 the contract, "the plaintiff must show, in essence, that defendant deprived the plaintiff of a

27 benefit conferred by the contract in violation of the parties' expectations at the time of

28 contracting."  Curley v. Wells Fargo & Co., 2014 WL 988618 at *5 (N.D. Cal. Mar. 10, 2014)

**United States District Court**
For the Northern District of California

1   (citation and quotation omitted); see also Woods v. Google, Inc., 889 F. Supp. 2d 1182,

2   1194 (N.D. Cal. 2012).

3       At a minimum, the plaintiff must identify the specific contractual provision that was

4   frustrated.  Lingad v. Indymac Fed. Bank, 682 F.Supp. 2d 1142, 1154 (E.D. Cal. 2010).

5   Further, because "the implied covenant operates to protect the express covenants or

6   promises of [a] contract . . . [it] cannot impose substantive duties or limits on the contracting

7   parties beyond those incorporated in the specific terms of [the parties'] agreement."

8   McClain v. Octagon Plaza, LLC, 159 Cal. App. 4th 784, 805 (2008).

9       Here, with regard to the Pick-a-Payment loan agreement, plaintiff's claim appears to

10  be based on the fact that various repayment options were offered, at least one of which

11  resulted in a negative amortization.  However, the FAC does not identify a particular

12  contractual provision that was breached, and also fails to allege facts sufficient to state a

13  claim for breach of the implied covenant of good faith and fair dealing in connection with the

14  terms of the loan or any other contract.  A claim of breach of the implied covenant of good

15  faith and fair dealing cannot be based on a statutory claim.

16      To the extent that plaintiff is asserting that Wells Fargo (or its predecessor, World

17  Savings) failed to clearly disclose to him the terms of the loan, including the amounts of the

18  payments and the consequences of opting for one type of payment over another – that is,

19  failed to disclose the certainty of negative amortization under one or more of the payment

20  options – the claim might more properly be framed as a claim for violation of the Truth in

21  Lending Act, 15 U.S.C. § 1601, et seq.  However, such a claim would be time-barred, as

22  the loan was consummated in 2004, and plaintiff filed the lawsuit in 2014, almost 10 years

23  later.  See 15 U.S.C. § 1640(e) (claim for damages based on failure to disclose as required

24  by TILA must be brought "within one year from the date of the occurrence of the violation").

25      To the extent that plaintiff's claim is that Wells Fargo breached the implied covenant

26  of good faith and fair dealing by failing to provide a loan modification, the law is clear that

27  there is no implied duty of good faith and fair dealing in an agreement that is not in

28  existence.  See Fireman's Fund Ins. Co. v. Maryland Cas. Co., 21 Cal. App. 4th 1586, 1599

United States District Court

For the Northern District of California

1    (1994) (prerequisite for any action for breach of the implied covenant of good faith and fair

2    dealing is the existence of a contractual relationship between the parties). Here, the only

3    contract plaintiff references in the FAC is the loan agreement (the deed of trust).  However,

4    nothing in the deed of trust granted plaintiff a right to a loan modification.

5         In the absence of an agreement to provide a loan modification, there can be no

6    claim for breach of the implied covenant for failure to provide such a modification.  Indeed,

7    the HBOR specifically provides that "[n]othing in the act that added [§ 2923.4 dealing with

8    loan modifications] . . . shall be interpreted to require a particular result of that process."

9    Cal. Civ. Code § 2923.4(a).  Here, there are no facts pled regarding any underlying

10   agreement for a loan modification – there are no allegations identifying the parties to such

11   an agreement, specifying the terms of such an agreement, or indication when and under

12   what circumstances such an agreement was entered into.

13        Without such a contractual obligation, plaintiff cannot establish a cause of action for

14   a breach of an implied covenant of good faith and fair dealing, since Wells Fargo was not

15   obligated to negotiate a loan modification in good faith in the absence of an agreement or

16   implied covenant to do so.  McFarland v. JP Morgan Chase Bank, 2014 WL 1705968 at *9

17   (C.D. Cal. Apr. 28, 2014); see also Gilliland v. Chase Home Finance, LLC, 2014 WL

18   325318 at *4 (E.D. Cal. Jan.29, 2014).

19        The court finds that the motion to dismiss the claim for breach of the implied

20   covenant of good faith and fair dealing must be GRANTED.  The dismissal is WITH LEAVE

21   TO AMEND.  However, any amended complaint must allege facts showing the existence of

22   an underlying contract and the other elements of the claim.

23              c.      Violation of § 17200

24        In the third cause of action, plaintiff alleges unfair competition under California

25   Business & Professions Code § 17200, which prohibits "any unlawful, unfair or fraudulent

26   business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus.

27   & Prof. Code § 17200.  Because § 17200 is written in the disjunctive, it establishes three

28   varieties of unfair competition – acts or practices that are (1) unlawful, (2) unfair, or

United States District Court

For the Northern District of California

(3) fraudulent.  <u>Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.</u>, 20 Cal. 4th 163, 180 (1999).

To pursue a § 17200 claim, plaintiff must establish that he "suffered an injury in fact and [ ] lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204.  Economic injury is a classic form of injury in fact, and exists where the plaintiff is deprived of property or money to which he or she has a cognizable claim.  <u>Kwikset Corp. v. Super. Ct.</u>, 51 Cal. 4th 310, 323 (2011).

In the third cause of action, plaintiff does not allege that particular conduct constituted either unlawful, unfair, or fraudulent business acts or practices.  Rather, he asserts a laundry list of claims against Wells Fargo, and does not distinguish among the three prongs of § 17200.  Plaintiff alleges that Wells Fargo

– "failed to provide a Single Point of Contact who was prepared to dismiss foreclosure prevention alternatives with Plaintiff," FAC ¶ 80;

– "failed to return phone calls or voicemails to Plaintiff;" FAC ¶ 81;

– "made repeated representations that Plaintiff's file would be properly considered for a modification," FAC ¶ 82;

– "lacks the personnel, knowledge, and skills to adequately train and educate its staff regarding HAMP Calculation Logics, eligibility requirements, and the NPV Test," FAC ¶ 83;

– "lacks the staff to organize, understand, and secure appropriate financial documentation," FAC ¶ 84;

– "lacks the staff to organize, understand, and secure appropriate financial documentation," FAC ¶ 85;

– "has engaged in unfair competition by signing a SPA and failing to abide by the covenants therein," FAC ¶ 88;

– failed to "honor[ ] its SPA agreement, thereby giving it an unfair competitive edge over mortgage servicers that are honoring its terms," FAC ¶ 91;

– "is unfairly competing against [other] servicers by failing to hire and train staff,

17

1   establish standard practices, and otherwise honor there [sic] terms of its SPA," FAC ¶ 93;

2   and

3          –      "violated Section 17200 in the marketing and advertising of Pick-a-Payment

4   loans," FAC ¶ 95.

5          As far as allegations of injury, plaintiff asserts that he has "suffered a loss due to the

6   exponential increase in the principal mortgage balance created by the Pick-a-Payment

7   loan."  FAC ¶ 96.

8          Wells Fargo contends that the third cause of action for "breach" of § 17200 fails

9   because the claim is preempted by HOLA; and because plaintiff fails to plead the required

10  elements and fails to plead in accordance with Rule 8.

11         Primarily, Wells Fargo asserts, plaintiff has pled no facts sufficient to show any

12  unlawful, unfair, or fraudulent business acts or practices on the part of Wells Fargo.

13  Indeed, Wells Fargo argues, it is difficult to tell exactly what plaintiff is claiming – that the

14  gist of the allegations seems to be that Wells Fargo did not provide the type of customer

15  service plaintiff wanted.  Wells Fargo contends that failure to meet a customer's service

16  expectations is not an unfair business practices.

17         Wells Fargo adds that to the extent plaintiff is alleging that the failure to provide him

18  with a loan modification under HAMP is an unfair business practice, he is mistaken, as

19  there is no right to a loan modification under HAMP.  Courts are generally in agreement

20  that borrowers are not third-party beneficiaries to HAMP agreements (or SPAs), which are

21  agreements between loan servicers and the United States pursuant to which the servicers

22  agreed to perform some loan modifications in return for financial incentives.  See Hoffman

23  v. Bank of America, N.A., 2010 WL 2635773 at *3-5 (N.D. Cal. June 30, 2010); Villa v.

24  Wells Fargo Bank, N.A., 2010 WL 935680 at *2-3 (S.D. Cal. March 15, 2010).  Thus, Wells

25  Fargo contends, because plaintiff has no rights under HAMP and no standing to pursue a

26  claim for violation of HAMP, he cannot maintain a UCL claim based on some asserted

27  violation of HAMP.

28         As for the allegation that Wells Fargo violated the UCL in the "marketing and

18

advertising" of Pick-a-Payment loans, Wells Fargo notes that because plaintiff obtained his loan in 2004, any claim of false advertising would be time barred, as the complaint in this case was not filed until 2014. <u>See</u> Cal. Bus. & Prof. Code § 17208 ("[a]ny action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued").

Finally, Wells Fargo argues that plaintiff has not alleged facts showing he has standing to bring a UCL claim. A private litigant may bring a § 17200 claim only if he has suffered injury in fact and has lost money or property as a result of the alleged unfair competition. Cal. Bus. & Prof. Code § 17204. Here, Wells Fargo asserts, plaintiff has alleged no injury and has alleged no money or property lost as a result of any action by Wells Fargo. Indeed, Wells Fargo contends, any loss that plaintiff might have suffered would have been caused by his failure to make the mortgage payments as promised (citing <u>DeLeon v. Wells Fargo Bank, N.A.</u>, 2011 WL 311376 at *7 (N.D. Cal. Jan. 28, 2011); <u>see also</u> Plastino v. Wells Fargo Bank, 873 F.Supp. 2d 1179, 1187-88 (N.D. Cal. 2012).

In opposition, plaintiff asserts that the § 17200 claim is "sufficiently pled" and that the FAC provides "satisfactory predicate violations under this section." Apart from that conclusory argument, plaintiff provides no response to Wells Fargo's contention that the § 17200 cause of action fails to state a claim.

With regard to the argument that plaintiff has failed to allege facts showing he has standing to assert the § 17200 claim because he has not alleged that he lost money or property as a result of any action by Wells Fargo, plaintiff responds that he spent money in "submitting loan modification documentation" requested by Wells Fargo, and also spent money "improving the Subject Property." He also argues that he has established injury in fact by alleging "potential foreclosure" of this property, which he claims is "undoubtedly a concrete and particularized injury."

The court finds that the motion must be GRANTED. First, plaintiff has not pled any facts in support of a claim that Wells Fargo engaged in unlawful, or unfair, or fraudulent business acts or practices.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    UCL's "unlawful" prong "borrows" violations of other laws such that a "defendant

2    cannot be liable under § 17200 for committing unlawful business practices without having

3    violated another law." Ingels v. Westwood One Broad. Servs., Inc., 129 Cal. App. 4th 1050,

4    1060 (2005) (internal quotation marks omitted); see also Farmers Ins. Exch. v. Super. Ct., 2

5    Cal. 4th 377, 383 (1992).  The court has granted Wells Fargo's motion as to all causes of

6    action asserted in the FAC, but has granted leave to amend as to some of them.  Thus, at

7    this stage, the court cannot determine whether there is a potentially viable claim to underlie

8    the UCL claim under the "unlawful" prong.  In any event, plaintiff has not identified one in

9    the FAC.

10    To state a claim under the UCL's "fraudulent" prong, a plaintiff "need only show that

11    members of the public are likely to be deceived." Bank of the West v. Super. Ct., 2 Cal. 4th

12    1254, 1267 (1992) (internal quotation marks omitted).  There are no facts alleged in the

13    FAC showing that members of the public are likely to be deceived by Wells Fargo's

14    conduct.  Moreover, any claim or portion of a claim that sounds in fraud must be pled with

15    particularity pursuant to Rule 9(b).  See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097,

16    1104 (9th Cir. 2003).

17    Finally, with regard to the "unfair" prong, the California Supreme Court held that "the

18    word 'unfair' in that section means conduct that threatens an incipient violation of an

19    antitrust law, or violates the policy or spirit of one of those laws because its effects are

20    comparable to or the same as a violation of the law, or otherwise significantly threatens or

21    harms competition." Cel-Tech, 20 Cal. 4th at 187.  Plaintiff alleges no facts showing any

22    violation of the "unfair" prong of § 17200.

23    The dismissal is WITH LEAVE TO AMEND.  If, as Wells Fargo argues, the gist of

24    the UCL claim is that Wells Fargo did not offer plaintiff a loan modification, plaintiff cannot

25    state a claim, because Wells Fargo was under no obligation to offer plaintiff a loan

26    modification for the reasons stated above.   Thus, any amended § 17200 claim must plead

27    facts based on something other than an alleged failure to offer a loan modification.  In

28    addition, plaintiff must make clear which specific acts by Wells Fargo constitute unlawful

United States District Court

For the Northern District of California

business practices, which constitute unfair business practices, and which constitute fraudulent business practices (which in addition must be pled with particularity as required by Rule 9(b)).

Further, any amended complaint must allege facts showing that plaintiff lost money or property as a result of specified unlawful, unfair, or fraudulent business practices by Wells Fargo.  It is not sufficient for plaintiff to assert that he has suffered a loss of money or property based on some "potential foreclosure" of the property.  Such an injury is speculative at best, as no foreclosure sale has taken place.  As for the money plaintiff allegedly spent on documentation and property improvements, he has not alleged any connection between those expenditures and any unlawful, unfair, or fraudulent business practice by Wells Fargo.

           d.     Equitable estoppel

In the fourth cause of action for equitable estoppel, plaintiff alleges that Wells Fargo agreed to offer modifications for borrowers who met eligibility requirements; that he met those requirements; that Wells Fargo failed to consider him for a modification under the SPA; failed to consider him for a principle reduction under the Department of Justice Settlement Agreement; failed to properly evaluate him under the HAMP calculation; and made statements in the SPA that are inconsistent with invoking its rights to enforce the deed of trust at issue here.

Wells Fargo argues that the fifth cause of action for equitable estoppel fails because equitable estoppel is an affirmative defense, not a claim for relief, and because plaintiff fails to meet the Rule 8 pleading standards.

In opposition, plaintiff recites what he claims are "the elements essential to invoke the doctrine of equitable estoppel," and asserts (without reference to any facts pled in the FAC) that he has "made all factual allegations necessary" to support this "claim."  He does not respond to Wells Fargo's argument that equitable estoppel is an affirmative defense, not an independent claim for relief.

The court finds that the motion must be GRANTED.  California does not recognize

an independent cause of action for equitable estoppel.  See Behnke v. State Farm Gen. Ins. Co., 196 Cal. App. 4th 1443, 1463 (2011) (citing 13 Witkin, Summary of Cal. Law (10th ed. 2005), Equity, § 190); see also Central National Ins. Co. v. California Ins. Guarantee Assn., 165 Cal. App. 3d 453, 460 (1985) (equitable estoppel "must be pleaded . . . either as a part of the cause of action or as a defense").  Accordingly, this cause of action is dismissed WITH PREJUDICE.

e.      Failure to respond to the QWR, in violation of RESPA

In the fifth cause of action, plaintiff alleges that Wells Fargo failed to adequately respond to plaintiff's QWR, as required by RESPA.  Under RESPA, the servicer of a federally regulated mortgage loan is required to provide borrowers with a timely written response to a QWR.  12 U.S.C. § 2605.[4]  Plaintiff alleges that he mailed a QWR "on or about April 2, 2013."  FAC ¶ 119.  Attached to the FAC as Exhibit B is what plaintiff claims is the QWR that was sent to Wells Fargo on April 2, 2013 by his "agent," which states that it disputes "the amount alleged to be due and owing contained in the Wells Fargo Notice of Default," and requests a "breakdown" of information.  Plaintiff alleges that Wells Fargo failed to respond to the QWR within 30 days, as required by the statute.  FAC ¶ 120.

Wells Fargo asserts that the fifth cause of action must be dismissed because plaintiff fails to allege that the information requested related to the servicing of the loan; because plaintiff fails to sufficiently allege damages; and because plaintiff fails to meet the Rule 8 pleading requirements.

In his opposition, plaintiff concedes that the fifth cause of action fails to state a claim, and agrees to dismiss the claim.  Accordingly, the motion to dismiss the RESPA claim is GRANTED.

---

[4]  RESPA was amended, effective July 20, 2011, to shorten the time afforded loan servicers to respond to QWRs.  Pub.L. No. 111–203, tit. XIV, § 1463 (2010).  Section § 2605(e)(1)(A) was amended to decrease the response time for acknowledgment of receipt of a QWR from "20 days" to "5 days."  Section 2605(e)(2) was also amended to decrease the response time for providing information or an explanation as to why information cannot be obtained from "60 days" to "30 days." See Mortgage Reform and Anti–Predatory Lending Act, Pub.L. No. 111–203, 124 Stat. 1376, 1463 (2010).

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

In accordance with the foregoing, the first cause of action for wrongful foreclosure is dismissed with prejudice. Leave to amend is granted as stated above to allege facts in support of a claim for violation of Civil Code § 2923.5(a)(2) and/or § 2923.6(b). The second cause of action for breach of the implied covenant of good faith and fair dealing is dismissed with leave to amend. The third cause of action for unlawful, unfair, and fraudulent business practices is dismissed with leave to amend. The fourth cause of action for equitable estoppel is dismissed with prejudice. The fifth cause of action is dismissed pursuant to plaintiff's concession that it fails to state a claim.

Any amended complaint must be filed by July 14, 2014. No new parties or new claims may be added without leave of court.

The June 18, 2014 hearing date is VACATED.

**IT IS SO ORDERED.**

Dated: June 13, 2014

_____
PHYLLIS J. HAMILTON
United States District Judge